Margaret E. Townsend (OR Bar No. 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6409
mtownsend@biologicaldiversity.org
*pro hac vice admission pending*

Brian Segee (CA Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023
tel: (805) 750-8852
bsegee@biologicaldiversity.org

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. FISH AND WILDLIFE SERVICE; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

Complaint                                                                                          Page 1

1. Plaintiff Center for Biological Diversity ("Center") challenges the failure of the U.S. Fish and Wildlife Service ("Service") to issue a final listing rule for the Long Valley speckled dace (*Rhinichthys nevadensis caldera*) ("dace") in violation of the Endangered Species Act's ("ESA") nondiscretionary, congressionally mandated deadline. The Service's failure to finalize the listing rule for the Long Valley speckled dace by the ESA's mandatory deadline has unlawfully delayed protection essential to this endangered fish's survival, thereby increasing its risk of extinction.

2. To remedy the Service's violation of the ESA, the Center seeks a Court order declaring the that the Service violated section 4(b)(6)(A) of the ESA, 16 U.S.C. § 1533(b)(6)(A), by failing to issue a timely final listing rule for the Long Valley speckled dace, and providing injunctive relief directing the Service to issue the final listing rule by a date certain.

## JURISDICTION AND VENUE

3. Plaintiff brings this action under the ESA, 16 U.S.C. §§ 1533, 1540(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

4. This Court has jurisdiction to review this action under 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. §§ 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g), Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the APA, 5 U.S.C. § 706(2).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (e), as a substantial part of the acts or omissions giving rise to the claims occurred in this district, and the Long Valley speckled dace's range is located entirely within this District.

6. No real property is involved in this action.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Civil Local Rule 3-2(c), the appropriate intradistrict assignment of this case is to the Sacramento Division.

## PARTIES

8.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, policy, and the media to protect imperiled species and their habitats. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including in Oakland and Los Angeles. The Center has more than 101,000 active members throughout the country, including many who live in California and Nevada and who recreate in and around the Long Valley Caldera and Mono County, California.

9.      The Center brings this action on behalf of its members who derive ecological, cultural, recreational, aesthetic, educational, scientific, professional, and other benefits from the Long Valley speckled dace. The Center's members are deeply interested in and committed to the conservation of imperiled freshwater species, including the Long Valley speckled dace, and to the effective implementation of the ESA to protect those species. The Center's members have visited the historic habitat of Long Valley speckled dace for the purpose of observing the species in the wild and have suffered aesthetic and recreational injury when they were unable to find any Long Valley speckled dace. Many members reside in close proximity to the Long Valley volcanic caldera ("Long Valley Caldera") and Mammoth Lakes watershed and regularly use and enjoy the lakes, tributary streams, springs and pools, unique hydrogeologic formations, and surrounding areas within the species' historic habitat range, and plan to continue visiting and enjoying these areas frequently and on an ongoing basis in the future.

10.      The Center's members have been, are being, and will continue to be adversely harmed by the Service's failure to issue a timely final listing rule protecting the Long Valley speckled dace as an endangered species under the ESA. The Center and its members have suffered actual and concrete injuries that are ongoing and will continue absent relief from this Court. For example, one of the Center's members, Lynn Boulton, is a long-time conservation advocate and volunteer leader, who regularly visits and studies the ecosystems of Mono and Inyo Counties, including the springs, streams, and wetlands of Long Valley that constitute habitat for the Long Valley speckled dace. Ms. Boulton has traveled to areas of

Complaint                                                                                      Page 3

occupied or historically occupied habitat for the species, including Whitmore Marsh Hot Springs, O'Harrel Canyon Creek, and other and other aquatic habitats in Long Valley, to observe native wildlife and assess environmental conditions. Although the Long Valley speckled dace is exceptionally rare and difficult to observe, Ms. Boulton has specifically sought to locate and observe the species, and she intends to return to these habitats on multiple occasions to look for the dace, including visits planned for June and in the fall this year. Ms. Boulton derives recreational, aesthetic, scientific, spiritual, and conservation benefits from the continued existence and recovery of the Long Valley speckled dace and the biodiversity of the Long Valley ecosystem. The Service's failure to issue the final rule listing the Long Valley speckled dace as endangered deprives Ms. Boulton of the timely protections Congress mandated under the ESA, increases the risk of further decline or extinction of the dace, and thereby harms her ongoing interests in observing, studying, enjoying, and conserving the Long Valley speckled dace and its habitat.

11.    The Service's failure to issue a timely final listing rule protecting the Long Valley speckled dace as an endangered species under the ESA leaves the dace vulnerable to the ongoing loss and degradation of habitat that is critical for its survival and recovery. The relief sought herein—including an Order directing the Service to issue a final listing rule by a date certain—would redress those harms. The Center and its members have no other adequate remedy at law.

12.    Defendant U.S. FISH AND WILDLIFE SERVICE is a federal agency within the U.S. Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to conserve non-marine endangered and threatened species under the ESA. 50 C.F.R. § 402.01(b). This authority encompasses proposed and final listing determinations for the Long Valley speckled dace.

13.    Defendant BRIAN NESVIK is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring agency decisions comply with the law. The Center sues Defendant Nesvik in his official capacity.

Complaint                                                                                              Page 4

14.     Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA regarding the Long Valley speckled dace and to comply with all other applicable federal laws. The Center sues Defendant Burgum in his official capacity.

## LEGAL BACKGROUND

### Endangered Species Act

15.     The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are to provide "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

16.     The Act directs the Secretary of the Interior, through the Service, to determine which species of plants and animals are "endangered" and "threatened" and place them on the list of protected species—otherwise known as "listing" a species. *Id*. § 1533.

17.     The Secretary has delegated its administration of the Act to the Service for freshwater aquatic species, including the Long Valley speckled dace. 50 C.F.R. § 402.01(b).

18.     ESA Section 4 requires the Service to protect imperiled species by listing them as "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). A species is "endangered" when it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

19.     The Act defines "species" to include "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).

20.     The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B)

overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

21.    The Service must list a species if the species meets the definition of "endangered" or "threatened" due to "any one or a combination of" these five listing factors. 50 C.F.R. § 424.11(c); *see* 16 U.S.C. § 1533(a)(1).

22.    If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

23.    The Service must make listing determinations "solely on the basis of the best scientific and commercial data available," *id.* § 1533(b)(1)(A), and may not allow for "economic considerations" when making "determinations regarding the status of species." H.R. Rep. No. 97-835, at 20 (1982).

24.    The ESA allows any interested person to formally petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

25.    To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines.

26.    First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected, and the process concludes.

27.    If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

28.     Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

29.     If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publishing the proposed listing rule, the Service must publish the final rule in the Federal Register, implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

30.     If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

31.     A species does not receive substantive protections under the Act until it is listed as endangered or threatened. Without these protections, endangered and threatened species continue to decline toward extinction and become more difficult to protect from the threat of extinction as their situations become even more dire.

32.     Once a species is listed, the Act provides both procedural and substantive protections to ensure not only the species' continued survival, but also its ultimate recovery. For example, Section 4(a)(3) of the Act requires the Service to designate areas that are "essential to the conservation of the species" as "critical habitat," and to develop and implement recovery plans. *Id.* §§ 1533(a)(3), (f); 1532(5). In addition, Section 7(a)(2) of the Act requires all federal agencies to consult with the Service to ensure their actions do not "jeopardize the continued existence" of listed species or "result in the destruction or adverse modification" of their critical habitat. *Id.* § 1536(a)(2). ESA Section 9(a)(1)(B) makes it unlawful to "take" any endangered species, which means no person can "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an endangered species without first

receiving authorization from the Service. *Id.* §§ 1532(19), 1538. Thus, listing is the crucial first step in the ESA's system of species conservation and recovery.

## FACTUAL BACKGROUND

### The Long Valley speckled dace

33.     The Long Valley speckled dace (*Rhinichthys nevadensis caldera*) is an extremely rare freshwater fish that is uniquely adapted to survive in hot springs. The dace historically could be found throughout seven historical sites, including Hot Creek and various isolated hot and cold springs and ponds, within the 700,000-year-old Long Valley Caldera in Mono County, California.

34.     Today, the Long Valley speckled dace has disappeared from all historic sites and suitable habitats within its range in its namesake Long Valley and is now believed to be completely extirpated from the wild.

35.     Whitmore Marsh once housed the last known wild Long Valley speckled dace population within the fish's native range, but a 2019 survey failed to locate any Long Valley speckled dace there. While Whitmore Marsh is still considered occupied habitat, Whitmore Marsh has since been developed into Whitmore Hot Springs and is now a recreational swimming pool, posing further threats to the Long Valley speckled dace and making the fish's existence at the site tenuous.

36.     Long Valley speckled dace currently are known to exist in a refugium managed by the California Department of Fish and Wildlife, known as the White Mountain Research Center ("WMRC"), which is outside of the Long Valley speckled dace's historical range. In 2022, this refuge population was used to translocate individuals to a site in O'Harrel Canyon Creek within the dace's historical range, but no Long Valley speckled dace have been since located at this site, and it is unknown whether a population will successfully establish there.

37.     The Long Valley speckled dace continues to face a high risk of extinction due to many significant threats, including geothermal energy development; dams and water

Complaint                                                                                      Page 8

diversions; alteration of water sources and habitat, including from recreational, urban, and rural development; livestock grazing; disease; predation; and climate change.

38.    Given its near total loss, the Long Valley speckled dace currently has little population redundancy to withstand the impacts of the many threats present within the Long Valley Caldera, which have led to extirpations of the fish's historical populations.

<strong>The Center's Petition and Listing History</strong>

39.    Confronted with the science showing that many threats risked imminent extinction, the Center petitioned the Service on June 8, 2020, to list the Long Valley speckled dace as an endangered species.

40.    On September 29, 2021, the Service issued a positive 90-day finding that the petition presented "substantial scientific or commercial information indicating that the petitioned action[] may be warranted," and specifically found that the Long Valley speckled dace may warrant endangered species listing due to various threats. 86 Fed. Reg. 53937.

41.    When the Service failed to issue the legally required 12-month finding by June 8, 2021, the Center sued the Service and secured a settlement requiring the Service to make its 12-month finding for the Long Valley speckled dace by July 21, 2024.

42.    The Service proposed to list the Long Valley speckled dace as endangered on August 8, 2024. 89 Fed. Reg. 64852.

43.    A final listing rule for the Long Valley speckled dace was due by August 8, 2025.

44.    With limited exceptions, the ESA requires the Service to issue a final listing rule within one year of a proposed listing rule. Nearly two years have now passed since the Service issued its proposed listing rule for the Long Valley speckled dace.

45.    The Service has failed to perform its nondiscretionary duty to publish a timely final listing rule for the Long Valley speckled dace, in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A). Until the Service publishes the legally required final listing rule, the Long Valley speckled dace will continue to lack necessary endangered species protections under the ESA.

46.     Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter to the Service dated November 25, 2025. Defendants have not remedied the violations set out in the notice letter, and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

**CLAIM FOR RELIEF**

*Violation of the ESA in Failing to Publish a Timely Final Listing Rule for the Long Valley Speckled Dace*

47.     Plaintiff realleges and incorporates by reference the preceding paragraphs.

48.     With limited exceptions, the ESA requires the Service to publish a final listing rule implementing its determination to list the species within 1 year of the proposed listing rule. 16 U.S.C. § 1533(b)(6)(A).

49.     In response to the Center's 2020 petition to list the Long Valley speckled dace, and in response to a lawsuit by the Center, the Service published a proposed rule to list the Long Valley speckled dace as an endangered species under the ESA on August 8, 2024. 89 Fed. Reg. 64852. Therefore, the final rule implementing the Service's determination to list the species was due by August 8, 2025.

50.     Defendants have not made the statutorily required final determination for the Long Valley speckled dace.

51.     Defendants failed to perform their nondiscretionary duty to timely publish the final listing rule in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare that Defendants violated the ESA by failing to issue a timely final listing rule;

2.     Provide injunctive relief compelling Defendants to publish a final rule listing the Long Valley speckled dace as threatened under the ESA by a date certain;

3.     Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

Complaint                                                                                                    Page 10

4.    Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.    Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 30th day of June, 2026.

*/s/ Margaret E. Townsend*
Margaret E. Townsend (OR Bar No. 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6409
mtownsend@biologicaldiversity.org
*pro hac vice admission pending*

*/s/ Brian Segee*
Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023
tel: (805) 750-8852
bsegee@biologicaldiversity.org